## THE STATE v. PAXTON *et al., Appellants.*

### Division Two, February 12, 1895.

1. **Criminal Law:** MURDER: PRACTICE: INSTRUCTION. On a trial for murder, an instruction asked by defendants that "the law clothes the defendants with the presumption of innocence which attends and protects them until it is overcome by testimony which proves their guilt beyond a reasonable doubt [which means that the evidence of guilt as charged must be clear, positive and abiding, fully satisfying the minds and consciences of the jury]. It is not enough, in a criminal case, to justify a verdict of guilty, that there may be strong suspicion, or even strong probabilities, of the guilt of the defendants; but the law requires proof by legal and credible evidence of such a nature that, when it is all considered, it produces a clear [undoubting] and satisfactory conviction of defendant's guilt; and unless the state has so proven the guilt of the defendants in this case, they are entitled to a verdict of not guilty," was properly modified by striking out the words in brackets, as they would have had a tendency, especially the word "undoubting," to mislead the jury.

2. ———: ———: CONSPIRACY: SELF-DEFENSE. Where three persons form a design to kill another and mutually agree to accomplish it and seek a pretext for so doing by provoking or bringing on the difficulty resulting in his death, they can not be justified on the ground of self-defense; and if they were all present mutually assisting each other in

The State v. Paxton.

the act, they, or either of them, would be guilty of murder of the first degree, and nothing that deceased may have said or done will mitigate the offense or reduce it to a lower grade of homicide.

3. ———: ———: ———. He who provoked the difficulty to the end that the deceased might be killed, is equally guilty with those who did the act, although he did not actually participate therein.

4. ———: ———: ———. Where the testimony for the state is to the effect that one of three defendants charged with conspiring to kill a third person, and with accomplishing the act, used insulting gestures and language toward the deceased, and such defendant fails in his evidence to contradict the state's witnesses in that particular, the statements of the latter will stand admitted as to such defendant, as fully as if acknowledged in terms.

5. ———: PRACTICE: INSTRUCTIONS: WAIVER. While it is the duty of the court in criminal trials to instruct the jury upon all questions of law arising in the case which are necessary for their information in giving their verdict (R. S. 1889, sec. 4208), yet, if the court should fail to do so, its attention should be called to the fact, and if all needful and proper instructions are not then given, exceptions should be saved and preserved in the motion for new trial, otherwise the point will be waived.

6. Practice: INSTRUCTIONS. It is not error to refuse instructions which are mere amplifications of others given.

7. ———: IMPROPER REMARKS OF COUNSEL. Improper remarks of counsel made in argument should be preserved in the bill of exceptions, in order to have them reviewed in the appellate court. The mere recital of such remarks in the motion for new trial is no evidence that they were made.

*Appeal from Hickory Circuit Court.*—HON. ARGUS COX, Judge.

AFFIRMED.

This appeal results from the conviction of the defendants of the crime of murder in the second degree. John W. Paxton and Theodore Paxton are brothers and Ort Paxton is the son of Jno. W. The two elder Paxtons are the nephews of Jno. W. Quigg, whom they killed, and Ort Paxton is the grand nephew of Quigg. The jury assessed the punishment of Jno. W.

and Ort at fifteen years in the penitentiary, and that of Theodore Paxton at ten years.

It appears incidentally in the record that a deadly feud existed between Quigg and the Paxtons. Both Quigg and John W. Paxton had lost a son by the hand of violence; Paxton's son Siegel was slain from ambush, and, perhaps, Quigg's son Enos in the same way. Before the death of the latter, he had been arrested, charged with the murder of Siegel Paxton, but what was the result of the prosecution is not disclosed.

The homicide on which this prosecution is based occurred in Wheatland, Hickory county, on the eighteenth day of November, 1893, and the weapons used were revolvers. The evidence in outline is to the following effect: The shooting occurred in the afternoon. In the morning of that day, Quigg, who was some seventy-three years of age, and quite decrepit, paid Robert Allen some money. Just then Jno. W. Paxton and Ort, his son, appeared. John W. stopped a little distance off; Ort came up close to Quigg, when the latter said, "Good morning, Ort," and Ort replied, "Go to h——l, you G—— d——d old son of a b——." Quigg said, "Ort, you ought not to talk to me in that way; I have never done you any harm." About that time Jno. W. Paxton came up and said, "No, G—— d——n you, but you killed his brother." Quigg replied, "John, I didn't do that." John Paxton answered, "I do not say that you did it, but you had it done." To this Quigg said he would not "talk to him in his own crowd; and Ort said, "I will talk to you in any d——d crowd."

The bitter state of feeling of the Paxtons toward Quigg was further exemplified by an occurrence which took place later in the forenoon when the latter was seen at a distance, shaking hands with some one, when John Paxton remarked, "the d——d old son of a b——

has found somebody that will shake hands with him."
After that, two dogs were seen fighting; Quigg was in
sight some distance away, and John Paxton, without
naming anyone, said he "would like to see those dogs
eat the d——d old son of a b——'s heart."

Along quite late, it seems, in the afternoon, John
and Ort Paxton were seen in a vacant space some ten
feet wide between two buildings, and John Paxton was
seen buckling on what appeared to be a pistol belt,
and the butt of a pistol was seen, but whether the
pistol was in his hand or in the belt, does not appear.
The Paxtons, then, all of them, appeared on the side-
walk in front of Powell's drug store, adjacent to this
vacant space. Meanwhile Quigg was preparing to
return home, and his wife being at the hack, one of the
neighbors was hitching up the team for them. This
was in sight of where the Paxtons were standing.
Being up at one of the stores but a few moments before
this, Quigg expressed himself in a way, and acted in a
manner, that indicated he feared trouble with the
Paxtons. He went down to the hack, the Paxtons,
however, still remaining in front of Powell's drug store,
and evidently watching Quigg's movements. When
Quigg reached the hack, he put some things into it; he
then stepped out in front of the team and looked down
to where the three Paxtons were standing. There-
upon Quigg reached back into the hack, got his
Winchester rifle, and remarking, as one witness states,
that he "would walk down by them" (the Paxtons).
Another witness says Quigg swore and said, "I am
going to see if they mean it," and proceeded to do
so. Upon this, Goodman, the neighbor, immediately
unhitched the team, and hitched them again to the
rack, apparently anticipating trouble would arise be-
tween Quigg and the Paxtons, who were still stand-
ing in front of Powell's drug store, which was some

sixty yards from the hack. But when Quigg started in their direction, two of them, John W. Paxton and Ort, his son, immediately disappeared in the vacant space heretofore mentioned between Powell's drug store and the building beside it, leaving Theodore Paxton still standing in front of the drug store. Other remarks are attributed to Quigg as he left the hack, and as he went toward Powell's drug store; one to the effect that he "would show them (the Paxtons) that he was not afraid of a little war;" that he "would lay the sons of b—— in their holes," etc., etc.

As Quigg was advancing up the street where Theodore Paxton was, the latter made insulting motions and gestures toward him, said "yaw, yaw, yaw," and, as Quigg passed him, Theodore Paxton said, "shoot, you son of a b——," or some such words, when Quigg, who had gone a little past Theodore Paxton, say some ten feet, instantly turned, and, making some remark, took his gun in both hands, and struck Theodore with it on the right side of the head, split his ear in two, and caused him to reel under the force of the blow, and the blood covered his cheek. On the instant that this blow was given, out rushed John W. and Ort Paxton from where they were ensconced, and began shooting at Quigg with their revolvers, then being within a few feet of him. John W. Paxton seized Quigg's gun, and, holding it so Quigg could not use it, continued to ply his pistol on him, Ort Paxton doing the same until Quigg fell, pierced with several balls, when John Paxton, having wrenched the gun from Quigg, struck him several blows on the head as he lay prone on the ground and gasping in death.

There is some testimony also, that Theodore Paxton also seized Quigg's gun immediately that he received the blow, and there is testimony that Theodore Paxton, also, fired on Quigg with a revolver. Though this

testimony is not as distinct and positive as that in regard to shooting being done by John W. and Ort Paxton, Theodore Paxton, however, on the witness stand, denied that he had a pistol that day, and there is testimony of others that they did not see him shoot.    John W. Paxton, after striking Quigg over the head several times with the gun, said, holding it up, "Here is the gun that killed my boy, and I killed him," referring to Quigg.    Just then Mrs. Quigg ran screaming and crying to where her husband lay, and, taking his head, placed it in her lap, when Jno. W. Paxton said, "You needn't cry, damn you, you ought to have thought of this long ago."    The foregoing are the facts in substance, laboriously dug out of a manuscript record without an index, and paged *occasionally* by grouping the figures of two pages *together* in the middle of a page; for instance, 127, 128, leaving whole pages without a mark or sign to indicate their number.

The instructions given at the instance of the state were:

."1.    The court instructs the jury that if they believe and find from the evidence that the defendants or either of them, at the county of Hickory and state of Missouri, at any time prior to the finding of the indictment, willfully, feloniously, deliberately, premeditatedly and of his malice aforethought, shot and killed John W. Quigg, Sr., in the manner and by the means charged in the indictment, they will find such defendant or defendants guilty of murder in the first degree, and so say by their verdict.

"2.    If the jury believe and find from the evidence that the defendants or either of them, at the county of Hickory and state of Missouri, at any time within three years next before the finding of the indictment, willfully, feloniously, premeditatedly, on purpose, and of their malice aforethought, shot and killed John W.

Quigg, Sr., by the means charged in the indictment, they will find such defendant or defendants guilty of murder in the second degree, and so say by your verdict.

"3.    The word willfully, as used in the indictment and instructions, means intentionally, not accidentally.

"The word feloniously means wickedly and against the admonition of the law.    Malice, in its legal sense, does not mean mere spite or ill will, but it means a condition of the mind that indicates a heart devoid of social duty and fatally bent on mischief.    Deliberately means in a cool state of the blood, and, as applied to an act, means that the act is not done in the heat of passion, or on sudden provocation, and that it was prompted by deep malignity of heart or motive of revenge.

"Premeditatedly means thought of beforehand for any length of time, however short.

"Malice aforethought means with premeditation and malice.

"4.    If the evidence justifies it, the jury is at liberty to find one or more of the defendants guilty and the other or others not guilty, or all or any of them guilty or not guilty, as the evidence warrants.

"5.    The defendant, Theodore Paxton, is a competent witness in his own behalf, and his testimony should be received and weighed by the same rules that govern the testimony of other witnesses, but in passing on the weight due to such defendant's testimony the jury may consider the fact that he is the defendant and his interest in the result of this case.

"5a.    If the three defendants had formed the design to kill Quigg, and had mutually agreed to accomplish such design, and if, in order to obtain a pretext or excuse to kill Quigg, the defendants sought, provoked or brought on the difficulty that resulted in the death of Quigg, then there is no self-defense in the

case.  And if, in the difficulty so sought, provoked or brought on by defendants for the purpose of obtaining a pretext to kill Quigg, defendants were all present mutually assisting each other, and they or either of them shot and killed Quigg, the killing was murder in the first degree, nor will anything that Quigg may have said or done mitigate the offense, or reduce it to a lower grade of homicide.

"6.  To excuse homicide by the plea of self-defense, it must appear that the act of the slayer was apparently necessary to protect himself from death or great bodily harm; and, if he used a deadly weapon, and under such circumstances as that he must be aware that death will be likely to ensue, the necessity must be apparently great, and must arise from imminent peril of life or great bodily harm.  And in this case, although the deceased, John W. Quigg, assaulted Theodore Paxton and struck him a severe blow on the head with a gun, still, if there was no apparent necessity for killing Quigg to prevent further injury to any of the defendants, and they might easily have protected themselves from all injury from Quigg without taking his life, then there is no self-defense in the case.

"7.  In passing on the question of the reasonableness of defendants' apprehensions of danger at the hands of Quigg, if they had any such apprehensions, and the necessity of taking his life to protect themselves, the jury might take into consideration the relative difference in age, health and strength of deceased and the defendants, if the evidence shows such difference, together with the acts and conduct of the deceased and defendants at the time of the affray and prior thereto, as shown by the evidence, as well as all the other facts and circumstances shown in evidence.

"8.  If you return a verdict of guilty of murder in the first degree, you will not assess the punishment.

If you return a verdict of guilty of murder in the second degree, you will assess the punishment at imprisonment in the penitentiary for a term of not less than ten years.''

At request of defendants, the following instructions were given:

''1. The jury are instructed that the indictment in this case is of itself a mere formal accusation or charge against the defendants, and is not of itself any evidence of the guilt of the defendants, and no juror should permit himself to be to any extent influenced against the defendants because or on account of the indictment in the case.

''2. The court instructs the jury that the defendants are presumed to be innocent, and it devolves upon the state to prove their guilt beyond a reasonable doubt, and, unless the state has established the guilt of the defendants as charged in the indictment to your satisfaction, beyond a reasonable doubt, you should give the defendants the benefit of such doubt, and return a verdict of not guilty; but such a doubt, to authorize an acquittal on that ground alone, should be a substantial doubt of guilt, and not a mere possibility of innocence.

''3. The court instructs the jury that it devolves upon the state to show by evidence, to the satisfaction of the jury beyond a reasonable doubt, every material fact necessary to constitute the crime with which the defendants stand charged, and if the jury have a reasonable doubt arising from the insufficiency of the evidence, of the existence of any such material fact, the jury should acquit.

''4. The law clothes the defendants with the presumption of innocence, which attends and protects them until it is overcome by testimony which proves their guilt beyond a reasonable doubt [which means

that the evidence of guilt as charged must be clear, positive and abiding, fully satisfying the minds and consciences of the jury]. It is not enough, in a criminal case, to justify a verdict of guilty, that there may be strong suspicion, or even strong probabilities of the guilt of the defendants, but the law requires proof by legal and credible evidence of such a nature that, when it is all considered, it produces a clear [undoubting] and satisfactory conviction of defendants' guilt, and, unless the state has proven the guilt of the defendants in this case, they are entitled to a verdict of not guilty.

"5. The court instructs the jury that the law permits a man to act on reasonable appearances and fear of danger of great bodily harm; no man is compelled to stand with his arms folded until it is too late to strike, and in this case, if it has been shown by the facts and circumstances in evidence that the deceased assaulted defendant Theodore Paxton with a gun, and at the time John Paxton and Ort Paxton, the brother and nephew of Theodore Paxton, had good reason to believe, and did believe, that deceased was about to take the life of Theodore Paxton, or do him some great bodily harm, and then and there fired the shots to prevent such apprehended danger, and at that time had good reason to believe, and did believe, that it was necessary for them to shoot Quigg to prevent such apprehended danger, then you should acquit the defendants on the ground of self-defense, although such shooting resulted in the death of Quigg.

"6. The court instructs the jury that if they believe from the evidence that John Paxton and Ort Paxton had good reason to believe, and did believe, that Quigg was about to take the life of Theodore Paxton or do him some great bodily harm, and that John Paxton and Ort Paxton acted in a moment of

apparently impending peril, it was not for them to nicely gauge the proper quantum or amount of force to be used. The question to be determined by this jury from the evidence is not whether the shooting was actually necessary to protect Theodore Paxton from death or great bodily harm, or whether some other or lesser force might not have been adequate, but whether, when they fired the fatal shot, they had, under all the circumstances, reasonable grounds to believe, and did believe, that such shooting was necessary to protect Theodore Paxton or themselves from immediate danger of great bodily harm.

"7. The court instructs the jury that in determining whether the defendants, John W. Paxton and Ort Paxton, were justifiable in acting on appearances in shooting Quigg, the jury may take into consideration the actions and conduct of Quigg on the day of the shooting or any threats that he may have made (if you believe from the evidence that he made any) against the defendants or either of them prior to the killing of Quigg.

"8. The court instructs the jury that they are the sole judges of the credibility of the witnesses, and the weight you will give to the testimony of each and every witness, and in passing upon the weight you will give to the testimony of any witness you may take into consideration the demeanor of the witness while on the stand, his or her manner of testifying, the relationship of the witness to the parties; together with the interest any witness may manifest in the case, and if you believe any witness has willfully testified falsely to any matters material to the issue, you are at liberty to disregard the whole or any part of such witness' testimony."

The court amended instruction number 4 asked by defendants, by striking therefrom the words marked

in brackets.   The three other instructions, 9, 10 and 11 asked by defendants and refused by the court, were contained in substance in those given.

*Chas. Kroff, W. G. Robertson* and *F. Marion Wilson* for appellants.

(1) The court erred in refusing instruction number 4 as asked by the defendants. *State v. Vansant*, 80 Mo. 67; *State v. Hicks*, 92 Mo. 43. (2) The court erred in giving instruction number 5 on part of the state. *Paddock v. Somes*, 102 Mo. 226; *State v. Tice*, 90 Mo. 112; *Elliott v. Keith*, 32 Mo. App. 579; *State v. Gilmore*, 95 Mo. 554; *State v. Hickman*, 95 Mo. 322; *State v. Smith*, 37 Mo. App. 137. (3) The court erred in not instructing the jury what is meant by a conspiracy after giving instruction number 5 for the state. *State v. Sharp*, 106 Mo. 106; *State v. Parker*, 106 Mo. 217. (4) The court erred in giving instruction number 6 on part of the state. *State v. Partlow*, 90 Mo. 608; *State v. Berkley*, 92 Mo. 41. (5) The court erred in not giving a clear or clearer instructions as to defense of relations. R. S. 1889, sec. 3462. Instruction number 11 on part of defendants should have been given. (6) The court erred in allowing the attorneys for the state to go out of the record in the argument of the case. (7) The court erred in not instructing on a lower grade of homicide. *State v. Sharp*, 106 Mo. 106. (8) The court erred in not instructing the jury that words are no excuse for an assault.

*R. F. Walker*, Attorney General, for the state.

The court did not err in modifying instruction number 4 as asked by defendant. None of the words omitted are to be found in any of the instructions on

the "presumption of innocence" in the cases cited by defendants, or dozens of others. *State v. Vansant*, 80 Mo., instruction 11, p. 73; *State v. Hicks*, 92 Mo., instruction 12, p. 437. Instruction 4 as given was all that was necessary on the presumption of innocence. The unnecessary repetition of instructions should be avoided. *State v. Reed*, 117 Mo. 604. Instruction 5, given by the court in regard to defendant Theodore Paxton testifying in his own behalf, correctly declares the law, and is in the form frequently approved by this court. *State v. Maguire*, 113 Mo. 670; *State v. Young*, 105 Mo. 634; *State v. Cook*, 84 Mo. 40; *State v. Smith*, 114 Mo. 406; *State v. Howell*, 117 Mo. 307; *State v. Mounce*, 106 Mo. 226. The act of defendants in combining to commit a felony on the person of Quigg constituted a conspiracy, but this offense was merged in and became a part of the murder they committed, and hence a definition of conspiracy was unnecessary. Instruction 5a, complained of, simply explained to the jury that, under the circumstances attending the commission of the crime in this case, self-defense could not be pleaded. The instruction, within itself, is not subject to objection, and required no definition to enable it to be understood. It has never been deemed necessary in this state or elsewhere, that we are aware of, to allege or define a conspiracy where, as in this case, it became merged in a felony. *State v. Anderson*, 89 Mo. 312; *State v. Walker*, 98 Mo. 95; *State v. Melrose*, 98 Mo. 594. Instruction 6 given by the court correctly defined the doctrine of self-defense applicable to this case under the evidence, and is not subject to objection. A sufficient instruction was given under section 3462, Revised Statutes, 1889, and nothing more was required. Exceptions were not saved to the giving or refusing of any of the defendant's instructions except numbers 4, 9, 10 and 11. So far as appears

from the record, all asked were given, except these. Exceptions must be saved to the giving or refusing of instructions at the time. *State v. Meyers,* 99 Mo. 107; *State v. Griffith,* 98 Mo. 672; *State v. McDonald,* 85 Mo. 539; *State v. Cantlin,* 118 Mo. 100; *State v. Duncan,* 116 Mo. 308; *State v. Lattimer,* 116 Mo. 524; *State v. Foster,* 115 Mo. 448; *State v. Elvins,* 101 Mo. 243; *State v. De Mosse,* 98 Mo. 340. No objections were made or exceptions saved at the time to any alleged improper remarks of attorneys for the state and this court will not, therefore, consider them. *State v. Howard,* 118 Mo. 127; *State v. Taylor,* 118 Mo. 153.

SHERWOOD, J.—I. There was no error in modifying instruction number 4 asked by defendants, by striking out the words indicated in brackets. Neither *State v. Vansant,* 80 Mo. 67, nor *State v. Hicks,* 92 Mo. 431, relied on by defendants, warrants the giving of the instruction in its original and unmodified form. Had the bracketed words remained, especially the word "undoubting," the tendency would have been to mislead the jury. The modified instruction was sufficient for all legitimate purposes.

II. Defendants urge that error occurred in giving instruction 5a on behalf of the state, stating that there is no evidence on which to base it. The evidence already set forth affords ample ground for such an instruction. No one can read that evidence with any degree of attention without reaching the conclusion that defendants had been dogging Quigg's footsteps that day, and, when he was about to start home, stationed themselves so that they could conveniently watch his movements, and be ready to take any advantage of him that might offer. John W. Paxton had evidently prepared for the occasion, for, a few moments before, he

was seen buckling on his pistol belt. The inference is a very strong one, indeed, that John W. Paxton and Ort, his son, withdrew and hid themselves, on seeing Quigg approach, in order that Theodore might provoke Quigg to make an assault so as to give John W. and Ort an opportunity, on the assault being made, to rush upon Quigg and wreak their contemplated vengeance on him. Taking this view of the matter, under the ruling in *Partlow's case*, 90 Mo. 608, the crime was murder in the first degree.

III. But it is insisted that Theodore had no connection with the difficulty except "his getting knocked down by Quigg." The record, however, is to the contrary, as already seen. Besides that, one witness for the state, and two for the defense, were of the impression that Theodore fired upon Quigg that day; two of the witnesses for the defense testifying that while the fight was in progress, they saw puffs of smoke issuing from where Theodore was standing, as if he was firing on Quigg. But whether he actually fired on Quigg or not, is quite immaterial, if he aided in bringing on the difficulty to the end that Quigg might be killed.

Furthermore, Theodore Paxton went upon the witness stand, and, while he testified that he had no weapon that day, yet he did not deny that he used insulting gestures and language to Quigg, and the statements of the witnesses respecting such matters, under the ruling in *Musick's case*, 101 Mo. 260, must stand admitted as to the testifying defendant, as much so as if admitted in terms. To the same effect see *State v. Alexander*, 119 Mo. *loc. cit.* 461; *State v. Patrick*, 107 Mo. *loc. cit.* 174.

IV. Contention is also made that the trial court, having given instruction 5a, should have defined what a conspiracy was. There is no merit in this contention, and if there were, that merit is destroyed by reason of

the fact that when the instructions for both state and defense were given, the defendants did not except, on the ground that the court had not "instructed the jury on all questions of law arising in the case which were necessary for their information in giving their verdict." *State v. Cantlin*, 118 Mo. *loc. cit.* 111.

While it is the undoubted duty of the trial court to instruct the jury as above indicated, in compliance with the fourth subdivision of section 4208, yet, if there should be an oversight in this matter, it is but fair to the trial court that counsel for the defense should call attention to the fact, at least in general terms, and, then, if all needful and proper instructions are not given, to save an exception and preserve it in the motion for a new trial.    *Cantlin's case, supra.*

The like line of remark applies to the failure of the lower court to instruct upon a lower grade of homicide than murder in the second degree.    On the point, however, as to whether the court *should* have so instructed, no ruling is made.

V.    Another contention of the defendants is that instruction 5*a*, given at the state's instance, is "in flat contradiction" of instructions given for the defendants. But, when the instructions are read together, no such repugnancy will be seen to exist.    Under our former rulings, beginning with *Partlow's case, supra,* if the difficulty was brought on with Quigg by defendants with a view to murder him, etc., then there was no self-defense in the case, no matter to what extremity they were driven during the self-sought combat.

VI.    Instructions 9, 10 and 11, refused defendants, were only amplifications of those already given, or else were properly refused.    The evidence disclosed the relationship of the defendants to each other, and the chief difference between the refused instruction 11 and instruction 6 given for defendants consisted in such

relationship being stated in plainer and more specific terms.

VII. It is lastly insisted that attorneys for the prosecution were permitted to go out of the record and make certain appeals to the jury. If this occurred, it has not been preserved in the bill of exceptions, and we have iterated and reiterated again and again that a mere recital in the motion for a new trial that certain statements were made by attorneys *is no evidence whatever* of the fact of such statements having been made. Some day, perhaps, the attorneys of this state will grasp and comprehend this point; but, if not, we will have to continue to decide it, term after term.

In conclusion, the defendants were fairly tried; there was abundant evidence of their guilt, and we affirm the judgment of the circuit court and direct that the sentence pronounced be executed. R. S. 1889, sec. 4286. All concur.