The State v. Waters, *Appellant*.

Division Two, June 8, 1897.

1.  **Practice**: EXCEPTIONS TO INSTRUCTIONS. This court will not notice the contention that an instruction is erroneous unless exception to its being given was saved.

2.  ———: EXCEPTIONS: INSTRUCTIONS ON ALL POINTS OF LAW. The failure of the trial court to instruct upon all questions of law will not be noticed by this court unless exceptions were saved on this account when the instructions on behalf of the State were given; *and* even if such exceptions were saved it would avail defendant nothing unless preserved in the motion for a new trial.

3.  **Larceny**: EVIDENCE: DEFENDANT'S STATEMENTS. Defendant, who was indicted for stealing a horse, was not entitled to have a witness repeat a conversation with him a few days after he took the horse, which was yet in his peaceable possession, in which he told the witness that the horse did not belong to him, but that the owner, who lived over west, would sell him, such conversation having taken place long after defendant had taken the horse into his possession.

*Appeal from Callaway Circuit Court.*—Hon. John A. Hockaday, Judge.

Affirmed.

*Phillip Thurmond* and *I. W. Boulware* for appellant.

(1) The trial court erred in defining by instruction number 2 for the State as to what constituted a reasonable doubt. This instruction is not correct; is too narrow—misleading and excluded all reasonable doubt that might have arisen from the want or lack of evidence. This instruction was prejudicial and damaging to defendant in this case. There was a lack of evidence to show a felonious intent. *State v. Blue*, 136 Mo. 41; *State v. Bobbst*, 131 Mo. 338; *State v. Nueslein*, 25 Mo. 111; *State v. Wells*, 111 Mo. 533. (2) The jury were

not properly instructed upon all questions of law arising in the case. This is reversible error. Laws 1895, p. 161; *State v. Banks*, 73 Mo. 592; *State v. Mathews*, 20 Mo. 55; *State v. Jones*, 61 Mo. 232; *Hardy v. State*, 7 Mo. 607. (3) The trial court committed reversible error in excluding from the jury the conversation of the defendant with the witness, John Hardesty, while defendant had the horse in his possession, and when Hardesty was trying to trade for or buy the horse from the defendant. The important and material question was, Did the defendant take the horse with a criminal intent? Any and all testimony which tended to prove or disprove this was legal and competent. It was admitted that he took the horse at the time and place stated. Was the taking a felony or a mere trespass? The testimony showed that he had not concealed nor tried to conceal the horse. Those statements were part of the *res gestae;* were connected directly with the transaction and were explanatory of the taking, and related to the subject-matter concerning which they were made when the horse was present in possession of defendant. *Burgert v. Borchert*, 59 Mo. 80; *Sutton v. Casselleggi*, 77 Mo. 397; *Darrett v. Donnelly*, 38 Mo. 492; *Railroad v. Clark*, 68 Mo. 371. (4) If it had been his purpose to feloniously convert the horse to his own use, he could have done so by sale to Hardesty. These declarations were not self-serving—not making evidence for himself, but were part of the *res gestae.* (5) Although the defendant may have taken the horse at the time and place stated, unlawfully, and without the knowledge or consent of the owner, yet such taking was simply a trespass unless he took the horse with a criminal and felonious intent. 12 Am. and Eng. Ency. Law, 761; *State v. Conway*, 18 Mo. 321; Roscoe's Crim. Ev. [7 Am. Ed.], pp. 622, 643; *State v. Shermer*, 55 Mo. 83; *State v. Ware*, 62 Mo. 597.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Instruction number 2 is as follows: "A reasonable doubt to authorize an acquittal must be a substantial doubt arising from the evidence and not a mere possibility of defendant's innocence." This is practically the same instruction as passed upon in the case of the *State v. Nueslein*, 25 Mo. 123, and which has frequently met the approval of this court. *State v. Leeper*, 78 Mo. 470; *State v. Owens*, 79 Mo. 631; *State v. Good*, 132 Mo. 126.   (2) Appellant fails to show upon what point of law the court failed to instruct the jury. Nor was such fact brought to the attention of the trial court in his motion for a new trial. This court can consider no question not passed upon or brought to the attention of the trial court in such motion.   (3) Defendant maintains that witness John Hardesty should have been permitted to answer the following question: "What did he say to you as to who owned the horse, if anything?" By this question self-serving statements of defendant were solicited, in fact, anticipated, from the witness. No error was committed in sustaining the objection for that reason. It is a principle well settled in law governing the introduction of evidence to exclude proof of all statements and declarations made by the defendant after the commission of the offense and in favor of his interest. *State v. Good*, 132 Mo. 127; *State v. Taylor*, 134 Mo. 109; *State v. Jackson*, 126 Mo. 525; *State v. Musick*, 101 Mo. 274; *State v. Smith*, 114 Mo. 424; *State v. Rider*, 95 Mo. 486; *State v. Walker*, 78 Mo. 386. Nor can it be said that such self-serving statements were a part of the *res gestae*. They were not connected directly with the transaction, and were under no circumstances explanatory of the taking.

SHERWOOD, J.—Larceny the crime, and a horse the subject of that crime, constitute the charge in the indictment against defendant. Conviction on this charge, and two years in the penitentiary were the results of a trial, and sentence being passed upon defendant and judgment entered on the verdict, he appeals to this court. Defendant is a cripple, goes upon crutches, and his account of the matter the following: ''I was at Hams Prairie on the night of July 11, 1896; I had gone down to my uncle, who lives in that neighborhood on the evening of the day before. This was the first time I had been down there. My home is in Audrain county, Missouri, where my father now lives and I am a bookkeeper and typesetter by trade. I took a horse from the rack at Hams Prairie and rode it away. I got the horse between nine and ten o'clock at night. I rode the horse to Audrain county that night, passing through Fulton at about twelve o'clock. I got to my uncle's in Audrain county about sun up and that afternoon stopped at a school house where a Sunday school was being held. I hitched my horse to the fence with the other horses and made no attempt to conceal it. I went to Mr. Hardesty's that night and to Mexico the next evening. While in Mexico the horse was hitched to the rack on the public square. I went from Mexico back to Hardesty's and stayed all night there. While at Mr. Hardesty's he and I had a talk about the horse. He asked me how much it would take to buy him and if it was my horse. I told him that I had gotten the horse from a man over west and I didn't know whether he wanted to sell him or not. I went from Hardesty's to a picnic at Young's Creek. I tied the horse with other horses and where it could be seen by anybody. I made no effort whatever to conceal it. Mr. Johnson arrested me and took the horse. This was the horse I

took and rode away from Hams Prairie in Callaway county.   I did not take the horse with the intention of stealing it, or permanently depriving the owner of it, nor to permanently appropriate it to my own use.   I wanted to go to my father's in Audrain county that night and thought I would ride the horse over and then turn it loose.   After getting over in Audrain county I heard of the picnic at Young's Creek, and then thought I would ride the horse over there.   I intended to turn the horse loose and let him go back.''

On the evening that the horse was taken, and just before that event, Wm. Tucker Mosley, a brother of the owner of the horse was riding it to the Hams Prairie church to a festival there, and going along he overtook defendant who was afoot.   Entering into conversation with defendant, the latter asked him whose horse he was riding, how old he was and what it was worth; said it was a good horse.   Price Johnson, deputy sheriff of Audrain county, who arrested defendant at a picnic at Young's Creek, some ten or twelve miles north of Mexico, testified that defendant on being asked if he had taken a horse in Callaway county admitted he had, and, asked where the horse was, pointed out the horse hitched to a rack along with others. Thereupon Johnson arrested defendant and took him to Mexico, and while on the way there defendant admitted that he took the horse and said he knew a good horse when he saw it.   This is the substance of the evidence.

Contention has been made as to the validity of instruction numbered 2 given at the instance of the State.   But if there is error in this regard, we can not notice it because no exception was saved to its being given.   Nor can the failure of the trial court to instruct upon all questions of law, etc., be noticed inasmuch as no exception was saved on this account when the

instructions on behalf of the State were given. And if such exception had been saved, it would have availed nothing, because not preserved in the motion for a new trial. We have ruled this point the same way very frequently heretofore. *State v. Cantlin*, 118 Mo. 100, and other cases.

Besides the instructions given at the request of defendant, nine in number, seem to cover the entire ground and to leave nothing more to be desired.

But one more point remains to be noticed, and that is, whether the exclusion of Hardesty's testimony was error. It was proposed to prove by him what defendant said to him as to who owned the horse, or about his selling it, or where he got it. Testimony in response to questions of this sort was properly excluded for the reason that the theft, if one had occurred, had taken place long before the conversations in relation to the horse happened, and so could have no tendency whatever to characterize, illustrate or give color to the act of taking the horse. 1 Greenleaf, Evid. [14 Ed.], secs. 108, 110; Whart., Crim. Evid. [9 Ed.], sec. 690.

"But when the declarations are distinguishable in point of time, or are open to the suspicion of being part of the defendant's plan of defense, they must be ruled out. . . . . . . . So one indicted for murder can not give in evidence his own conversations, had after going half a mile from the place of murder, when he has had time to collect himself to make out his case. And so where a defendant, indicted for murder, was met after the transaction at some distance from the scene with blood on his hands, it was held that his declaration at the time to account for the blood on his hands, and other suspicious circumstances, were not admissible; and this, though there was no person present when the homicide was committed." Whart., Crim. Evid. [9 Ed.], sec. 691.

If testimony of the sort contended for is admissible, then all a party would have to do in order to successfully steal a horse and *ride him to California*, would be to tell every night where he stopped that the horse belonged to another man and thus escape the pains and penalties of larceny.

Therefore judgment affirmed.      All concur.