THE STATE· v. WILLIAM WILLIAMS, *Appellant*.

Division Two, November 9, 1897.

1. **Murder**: INSTRUCTION FOR MURDER IN THE SECOND DEGREE.   Where all the evidence tends to establish murder in the first degree, and the only issue raised by the evidence and by the defense is one of *alibi*, it is not improper to refuse to instruct for murder in the second degree.

2. ———: ———: PRACTICE: WAIVER.   Where the court has failed in a murder trial to instruct for murder in the second degree, such failure will not form a ground for reversal unless brought opportunely to the attention of the trial court and exception saved.

3. ———: NEWLY DISCOVERED EVIDENCE.   Unless the motion for a new trial points out what the newly discovered evidence consists of, and such claim is fortified by affidavits, this court can not consider the point.

*Appeal from Jackson Criminal Court.*—Hon. John W.
Wofford, Judge.

Affirmed.

Defendant, a negro, convicted of murder in the
first degree of Lawrence Schuebel, appeals to this court.

The record discloses, in substance, these facts:

On the night of the twenty-third of November,
1896, at a house kept by one Sam Prince, in Kansas
City, Missouri, a negro dance was in progress. The
defendant, in company with others, was in attendance
at said dance. About one block from the dance was
located a saloon. The negroes at the dance were pass-
ing backward and forward from the dance to the saloon
during the progress of the festivities. About 12 o'clock
at night the defendant, in company with one Joe Pat-
terson, the defendant's mother, and one Anne Harris,
*alias* Cherokee Anne, left the saloon and was passing
up the street known as Baltimore avenue in Kansas
City, toward the dance, and the undisputed evidence
shows that about this time someone hurrahed for
Bryan, and that the people who did this hallooing were
three Hungarians, who were going up the street ahead
of defendant and his companions, and who up to that
time had said nothing whatever to defendant and his
comrades. Immediately after the shout by the Hun-
garians one or both of the women, without any words
of warning, began to throw stones at the three Hun-
garians, and the evidence shows conclusively that
almost immediately the defendant hallooed to the Hun-
garians to halt, and as they halted defendant exclaimed,
"I will make you a damned Bryan," or words to that
effect, and walked toward Schuebel and struck him
and then stepped back and drew his pistol, and while
Schuebel stood motionless and unarmed before him,

'fired at him, striking him in the abdomen, and the ball ranged downward and backward and lodged in the hip. The evidence shows that up to this time defendant and his companions had never spoken a word to and did not know the names or residences of Schuebel and his comrades. No provocation or justification whatever is shown for the assault. The defendant offered no testimony even squinting at self-defense, but, on the contrary, undertook by his own and his mother's testimony, to show an *alibi* by proving that while he was at the dance and at the saloon on the night of the shooting, yet at the time of the killing he was not at the point in the street where the shooting occurred. No one of the comrades of the defendant claims that Schuebel or his companions offered any provocation whatever for the assault. Immediately after the shooting defendant and his companions turned and fled, and defendant was shortly afterward discovered to be at his home. It was clearly proven that defendant was armed at the dance on the night of the killing and had a pistol in his coat pocket, though this he denied. The evidence develops no reason for the killing, except a heart regardless of social duty and fatally bent on mischief. The defendant was arrested at his home about 2 o'clock that night. At the firing of the shot Schuebel fell to the sidewalk and his companions carried him to the Boulevard police station, and from thence he was transferred to the city hospital, where on the following day he died. The man Prince, at whose house the dance was held, was the keeper of a dancing "dive" and was, by the testimony, shown to be himself an all-around thief. Joe Patterson, a comrade of defendant, and living at the same house of defendant's mother, and who was present at the time of the shooting, testified deceased made no move nor spoke a word even after defendant slapped him.

The court gave the following instructions, to which the defendant excepted:

"The indictment in this cause was filed on the eighteenth day of January, 1897, and charges the defendant with murder in the first degree. Murder in the first degree is the killing of a human being willfully, feloniously, deliberately, premeditatedly and with malice aforethought.

"For the purpose of this cause, 'willfully,' means intentional, not accidental. 'Feloniously' means wickedly and against the admonition of the law. 'Deliberately' means in a cool state of blood, that is, not in a sudden passion caused by some lawful cause of provocation to passion. If, therefore, in such state, the defendant formed a design to kill Lawrence Schuebel and did kill him, it was deliberately done. 'Premeditatedly' means thought of beforehand for any length of time, however short. 'Malice' in its legal sense does not mean mere spite or ill will, but means an unlawful state of mind that indicates a heart devoid of social duty and fatally bent on mischief. 'Malice aforethought' means malice with premeditation.

"The court instructs the jury that if they believe and find from the evidence that the defendant, William Williams, at the county of Jackson, State of Missouri, at any time prior to the finding of the indictment, willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, shot and killed Lawrence Schuebel, in the manner and by the means charged in the indictment, they will find the defendant guilty of murder in the first degree, and so say by their verdict.

"The court instructs the jury that if they return a verdict of murder in the first degree, they have nothing to do with the punishment.

"The court instructs the jury that before they can convict the defendant, they must be satisfied of his

guilt beyond a reasonable doubt; such doubt, to author-
ize an acquittal upon reasonable doubt alone, must be
a substantial doubt of the defendant's guilt, with a view
to all the evidence in the case, and not a mere possi-
bility of the defendant's innocence.

"The court instructs the jury that the law presumes
the innocence and not the guilt of the defendant, and
this presumption of innocence attends the defendant
throughout the trial, and at the end entitles the defend-
ant to an acquittal, unless the evidence in the case,
when taken as a whole, satisfies you of the defendant's
guilt beyond a reasonable doubt as defined in these
instructions.

"The court instructs the jury that the defendant is
a competent witness in this case, and you must consider
his testimony in arriving at your verdict, but in deter-
mining what weight and credibility you will give to his
testimony in making up your verdict, you may take
into consideration, as affecting his credibility, his inter-
est in the result of the case, and that he is the accused
party on trial testifying in his own behalf.

"If verbal statements of the defendant have been
proven in this case, you may take them into considera-
tion, with all the other facts and circumstances proven.
What the proof may show you, if anything, that the
defendant has said against himself, the law presumes
to be true, because against himself; but anything you
may believe from the evidence the defendant said in his
own behalf, you are not obliged to believe, but you may
treat the same as true or false, just as you believe it
true or false, when considered with a view to all the
other facts and circumstances in the case.

"The jury are the sole judges of the credibility of
the witnesses, and of the weight and value to be given
to their testimony.

"In determining as to the credit you will give to a

witness and the weight and value you will attach to witness' testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives of the witness in testifying, the witness' relation to, or feeling for or against the defendant or the alleged injured party, the probability or improbability of the witness' statements, the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account with all the other facts and circumstances given in evidence, it is your province to give each witness such credit and the testimony of each witness such value and weight as you deem proper.

"If upon a consideration of all the evidence you conclude that any witness has willfully sworn falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness' testimony.

"If there is any evidence before you that raises in your minds a reasonable doubt of the presence of the defendant at the time and place where the crime was committed, if you find a crime was committed, you will acquit the defendant.

"The court further instructs the jury that he who willfully, that is, intentionally, uses upon another, at some vital part, a deadly weapon, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this, must be presumed to intend death, which is the probable and ordinary consequence of such an act, and if such deadly weapon is used without just cause, he must be presumed to do it wickedly, or from a bad heart. If,

therefore, the jury believe from the evidence in this case that the defendant took the life of Lawrence Schuebel by shooting him in a vital part with a pistol, with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or extenuation, then such killing is murder in the first degree, and while it devolves on the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proven by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if the jury can satisfactorily and reasonably infer them from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree, and should so find in their verdict."

*S. R. Green* for appellant.

(1) The testimony of Stifler, Patterson and Barker is irreconcilably conflicting. Each had a motive for testifying as he did. This, connected with the fact that all the witnesses for defense testified that Williams was elsewhere at the time of the shooting, must lead, by a process of logical reasoning, to the conclusion that the jury acted from passion and prejudice. *State v. Packwood*, 26 Mo. 340; *State v. Burgdorf*, 53 Mo. 65; *State v. Mansfield*, 41 Mo. 470; *State v. Daubert*, 42 Mo. 238. (2) The court erred in omitting to instruct the jury as to murder in the second degree. If this appellant shot Lawrence Schuebel, he did so when a general quarrel was in progress, and when the mind was under excitement, and the blood not in a cool state. *State v. Dickson*, 78 Mo. 438; *State v. Thomas*, 78 Mo. 327; *State v. Duncan*, 116 Mo. 296; *State v. Talbott*, 73

Mo. 347; *State v. Kilgore*, 70 Mo. 546; *State v. Mitchell*, 64 Mo. 191. (3) The court erred in omitting to instruct the jury as to the law in cases of self-defense. The evidence in this case shows that the deceased turned around and started back toward this appellant, at the same time dropping his hand to his side. *State v. Duncan*, 116 Mo. 296; *State v. Brown*, 63 Mo. 439; *State v. Alley*, 68 Mo. 124. (4) The court erred in the first instruction to the jury in incorrectly defining the term "deliberately," to the prejudice of the defendant. *State v. Reed*, 117 Mo. 604; *State v. McGinniss*, 76 Mo. 326; *State v. Andrew*, 76 Mo. 101; *State v. Eaton*, 75 Mo. 587; *State v. Talbott*, 73 Mo. 347. (5) The court erred in giving the following instruction to the jury: " 'Premeditatedly' means thought of beforehand, for any length of time, however short." *State v. Foster*, 61 Mo. 549; *State v. Lane*, 64 Mo. 319; *State v. Kring*, 64 Mo. 591. (6) The court erred in failing to instruct the jury in connection with the charges as to murder in the second degree, that it was their duty to assess the punishment. R. S. 1889, sec. 4229.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Objections to admission of evidence must be made and the grounds thereof stated when evidence is offered and exception taken to the ruling of the court, and if no exceptions are taken at the time, it is not subject to review. *Russell v. Whitely*, 59 Mo. 196; Kelly's Crim. Prac., sec. 435; *State v. Hope*, 100 Mo. 347. (2) The instructions first properly define murder in the first degree. The term "willfully" is properly defined as meaning intentionally, not accidentally. The word "deliberately" was properly defined as used in

these instructions under the evidence. *State v. Stephens*, 96 Mo. 638; *State v. Smith*, 114 Mo. 406; *State v. Wieners*, 66 Mo. 13; *State v. Avery*, 113 Mo. 475; *State v. Stephens*, 96 Mo. 638; *State v. Ellis*, 74 Mo. 219; *State v. Fairlamb*, 121 Mo. 146. (3) There was no error by the trial court in instructing the jury that if they found defendant guilty of murder in the first degree that they had nothing to do with assessing the punishment, as that is fixed by law. *State v. Avery*, 113 Mo. 476; *State v. Harvey*, 131 Mo. 339. (4) The defendant can not object in this court that the trial court failed to instruct upon all the law of the case because no exception was saved at the time of giving instructions on that ground. *State v. Cantlin*, 118 Mo. 111; *State v. Nagel*, 136 Mo. 45. (5) The defendant did not except at the time to the failure of the court to instruct on murder in the second degree, and he can not be heard to object now. He has waived this point in the case. *State v. Foster*, 136 Mo. 653. (6) On trial for murder in the first degree the court is not required by Revised Statutes of 1889, section 3461, to instruct on murder in the second degree where the evidence shows only murder in the first degree. *State v. Hopper*, 71 Mo. 425; *State v. Wieners*, 66 Mo. 13; *State v. Foster*, 61 Mo. 549; *State v. Lane*, 64 Mo. 319; *State v. Pollard*, 132 Mo. 288.

SHERWOOD, J.—The indictment is in usual form and no exceptions were saved by defendant to the admission or exclusion of testimony.

The trial court instructed the jury on the law of the case and embodied its views in but one instruction, which, taken in its entirety, correctly states the law of the case, and which will accompany this opinion.

Complaint is made that the court did not instruct on murder in the second degree. There was nothing

in the evidence to warrant such an instruction. It was either a case of murder in the first degree, or else defendant was entirely innocent in consequence of there being sufficient testimony to raise a reasonable doubt in the minds of the jury as to whether defendant was present at the scene and time of the crime's perpetration, and on this point the jury received proper instruction.

Besides, even if a failure to instruct on murder in the second degree had improperly occurred, still such failure would have formed no ground for reversal unless the matter were opportunely brought to the attention of the trial court, and exception saved, as pointed out in *State v. Cantlin*, 118 Mo. 111; *State v. Paxton*, 126 Mo. 500; *State v. Goforth*, 136 Mo. *loc. cit.* 115; *State v. Foster*, 136 Mo. *loc. cit.* 655.

The same line of remark applies to the complaint made that the jury was not instructed on the theory of self-defense; there was none in the case and no exception was saved, as above pointed out.

And as to the newly discovered evidence claimed in the motion for a new trial, in what that newly discovered evidence consisted we are not informed, nor are there any fortifying affidavits filed as required in the following cases: *State v. Campbell*, 115 Mo. *loc. cit.* 393; *State v. Welsor*, 117 Mo. 582; *State v. McLaughlin*, 27 Mo. 111; *State v. Nagel*, 136 Mo. *loc. cit.* 50.

In conclusion, we find nothing in this record to mitigate or extenuate the crime with which defendant stands charged, and the evidence amply supports that charge. Moved by these considerations, we affirm the judgment and direct the sentence pronounced by the law to be executed. All concur.