## THE STATE v. MEADOWS, Appellant.

### Division Two, May 8, 1900.

1. **Murder:** INDICTMENT: NO ASSAULT. Where a battery occurs in the perpetration of a murder, it is not only necessary to aver that an assault was committed but it must also be alleged that the assault and battery were committed upon the same person. The indictment must not only charge that defendant committed an assault, but it must state upon whom it was committed. And the indictment in this case does not allege that an assault was committed on the person whom the defendant was found guilty of murdering. (Distinguishing State v. Phelan, 65 Mo. 547, and State v. Schloss, 93 Mo. 364).

2. ————: MANSLAUGHTER IN FOURTH DEGREE. Where the evidence shows that the defendant was guilty of murder in the first or second degree, or that the killing was done in necessary self-defense, an instruction for manslaughter in the fourth degree is not warranted by the evidence.

3. ————: FAILURE TO INSTRUCT: EXCEPTIONS. Where in a murder case no instruction is asked by the defendant on manslaughter and the failure of the court to give all proper and needful instructions was not excepted to at the time, the trial court can not be convicted of error for omitting to give an instruction on that point.

Appeal from Christian Circuit Court.—*Hon. James T. Neville*, Judge.

REVERSED AND REMANDED.

*Watson & Gideon, Hays, Thornsberry* and *Walker & Joins* for appellant.

(1) The indictment in this case is fatally defective. It charges the shooting and wounding of Stephen Bilyeu, and

that Stephen Bilyeu died of said wounds, but fails to charge that any assault was made on Stephen Bilyeu, or on any one else by this defendant, or either of his co-defendants in this indictment.    State v. Lester, 9 Mo. 666; State v. Blan, 69 Mo. 317; State v. Rector, 126 Mo. 328; State v. Evans, 128 Mo. 412; State v. Clark, 147 Mo. 28.    If it be necessary to prove an assault in a case of homicide by shooting, it is necessary to allege it in the indictment; and if it is necessary to allege and prove it, it follows that the name of the person assaulted must be given.    (2) A motion in arrest is the proper practice in felony cases, and not a motion to quash. State v. Rector, 11 Mo. 29; State v. Gray, 21 Mo. 492; State v. Lichliter, 95 Mo. 402.    (3) When an indictment is materially defective neither a motion to quash nor a motion in arrest of judgment is necessary, but the question may be raised for the first time in this court.    State v. Myers, 99 Mo. 107; State v. Fleming, 117 Mo. 377; State v. Levy, 119 Mo. 434.    (4) This defect in the indictment is not covered by section 4115, R. S. 1889 (jeofails), nor is it cured by verdict.    State v. Meek, 70 Mo. 359.    (5) It would be hard to find cases more alike in their main features than the case at bar and the Mathews case, and the court should have instructed for manslaughter in the fourth degree, and this notwithstanding the fact that defendant claimed the shooting to have been done in self-defense.    State v. Mathews, 148 Mo. 195; State v. Grugin, 147 Mo. 39.    It is the duty of the trial court to instruct the jury as to every grade of crime comprehended in the indictment on which there is any evidence tending to prove such grade of crime.    State v. Bryant, 55 Mo. 75; State v. Branstetter, 65 Mo. 149.    It is the duty of the trial court to give proper instructions whether requested to do so or not.    State v. Banks, 73 Mo. 592; State v. Crabtree, 111 Mo. 136; State v. Taylor, 118 Mo. 153; State v. Nelson, 118 Mo. 124; State v. McGuire, 113 Mo. 670.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The indictment was sufficient.   (a) The indictment, when read as a whole, shows clearly upon whom the assault was made.   Indictments must be read as a whole and not in fragments.   State v. Schloss, 93 Mo. 361.   (b) But no allegation of an assault is necessary in this indictment, for the reason that a battery is alleged and the assault is included in the battery. State v. Schloss, 93 Mo. 364; State v. Phelan, 65 Mo. 547.   (c) The indictment alleges a battery upon Stephen Bilyeu, and alleges an assault; and the fact that it does not expressly say that the assault was upon said Stephen Bilyeu, can not prejudice the defendant.   State v. Craighead, 32 Mo. 561.   (2) The defendant was not entitled to an instruction as to manslaughter in the fourth degree. The testimony of no witness, when read as a whole, warrants such an instruction.   The evidence shows, on the contrary, that after a slight altercation at the fence, defendant walked away and the difficulty was at an end; and that after reflecting upon the matter he returned and committed the murder.

BURGESS, J.—On the 20th day of April, 1899, defendant was convicted in the circuit court of Christian county of murder in the second degree, and his punishment fixed at ten years imprisonment in the penitentiary, for having theretofore at said county shot and killed with a Winchester rifle one Stephen Bilyeu. After unsuccessful motions for a new trial and in arrest, defendant appeals.

The homicide for which defendant was convicted occurred over the removal of a fence of which deceased Stephen Bilyeu and defendant were the joint owners. They owned adjoining farms which were separated by this fence. When the fence was originally built Bilyeu furnished the ground poles, stakes and double riders, six pieces to each

panel, and defendant Meadows furnished six rails to each panel, which composed the body of the fence.

Trouble arose between the parties about repairing the fence, and defendant by notice in writing dated May 4, 1898, notified Bilyeu that six months from that date he intended to move his part of said fence. This fence starting at a point at the west ran east a distance, thence south about two hundred yards, thence east again, the entire length being two hundred and fifty to three hundred yards. About two weeks before the difficulty Stephen Bilyeu tore down and moved away that part of the fence which ran north and south.

The day the notice expired Meadows took his gun and ax and went to the fence where he was met by Stephen and Peter Bilyeu, his son, each of whom had a gun which they drew upon Meadows, and by abuse and threats of violence compelled him to lay down his gun and ax, and compelled him to leave there.

On the day of the homicide, Meadows, assisted by several of his neighbors, among them a brother and a brother-in-law of Steve Bilyeu, commenced to remove the fence, giving to Meadows the six rails put in by him and giving to Bilyeu the ground poles and stakes and riders put in by him.

While the hands hired by Meadows were at work tearing down and rebuilding this fence at the east end, and defendant and his brother Robert were at work at the west end, near the house of Meadows, Steve Bilyeu, the deceased, and his son Pete, came to the east end with their guns and got into an altercation with the hands at work for Meadows. They also had a wagon for the purpose of hauling away the fence. They were cursing and threatening and forbidding the hands to move the fence, in such loud and boisterous language that they were heard by defendant, where he was working and by another witness some distance away.

While this difficulty was in progress, James Bilyeu, a son of deceased, and Elizabeth, his wife, were seen by de-

fendant going to the scene of the difficulty carrying another gun.

And defendant having heard of threats to kill him if he moved the fence according to the notice, quit his work, went to his house, got his gun, a Winchester rifle and his brother's shotgun, and they started to the east end of the fence where the disturbance was in progress.

When defendant got there Steve Bilyeu had counted fifty-eight panels of fence, said it was his, and threatened to kill any d—n son of a b—h that touched a rail.

Defendant then said to his hands, "all who are working for me come to the other end of the fence and go to work," and turned and walked away, his hands following him.

A number of witnesses testified that when Meadows started away Steve Bilyeu fired at him and was in the act of firing the second barrel of his gun when Meadows turned and shot him.

The witnesses for the State say that as Meadows was walking away, his wife, who was some distance away, called out, "Kill them, Bud, or die for your rights; do not let them steal your labor," and that Meadows turned, saw Steve Bilyeu in the act of picking up a rail, and shot him; that Steve's gun went off accidentally.

The reputation of the Bilyeus, Steve, Pete and James, was shown by many witnesses to be bad for being turbulent and violent, and dangerous men.

The court instructed for murder in the first and second degrees, and self-defense.

The first question presented upon this appeal is with respect to the indictment, which defendant claims is fatally defective, upon the ground that it fails to charge that any assault was made upon Stephen Bilyeu by defendant or either of his co-indictees. The indictment charges that "John S. Meadows, Robert Meadows, Hosea Bilyeu, Martin Bilyeu and William Bilyeu.....feloniously, willfully, deliberately, pre-

meditatedly on purpose and of their malice aforethought did make an assault, and with a dangerous and deadly weapon, to-wit, a Winchester rifle then and there loaded with gunpowder and leaden balls which they, the said John S. Meadows, Robert Meadows, Hosea Bilyeu, Martin Bilyeu and William Bilyeu in their hands then and there had and held at and against him, the said Stephen Bilyeu, then and there feloniously, on purpose and of their malice aforethought, willfully, deliberately and premeditatedly did shoot off and discharge, and with the Winchester rifle aforesaid, and the leaden balls aforesaid, then and there feloniously, on purpose and of their malice aforethought, willfully, deliberately and premeditatedly did shoot and strike the said Stephen Bilyeu in and upon the left side of the body of him, the said Stephen Bilyeu, giving him the said Stephen Bilyeu then and there with the dangerous and deadly weapon to-wit, the Winchester rifle aforesaid, and the gunpowder and leaden balls aforesaid, in and upon the left side of the body of him, the said Stephen Bilyeu, one mortal wound of the breadth of one-half inch, and of the depth of ten inches, of which mortal wound the said Stephen Bilyeu then and there instantly died; and so the grand jurors aforesaid, upon their oaths aforesaid, do find and say that the said John S. Meadows, Robert Meadows, Hosea Bilyeu, Martin Bilyeu and William Bilyeu, the said Stephen Bilyeu, at the county and State aforesaid, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, did kill and murder, against the peace and dignity of the State."

But it nowhere alleges that an assault was committed upon Stephen Bilyeu, or any other person, and in case of an indictment for murder when a battery occurs in its perpetration it is not only necessary to aver that an assault was committed, but it must also be alleged that the assault and battery were committed upon the same person. It is true the indictment alleges that defendant did make an assault, but it does

not allege upon whom, both of which are necessary in an indictment for an offense of this character.

It should have alleged that the grand jurors upon their oath present and charge that John S. Meadows, Robert Meadows, Hosea Bilyeu, Martin Bilyeu and William Bilyeu, late of the county aforesaid, on the ——— day of November, 1898, at the county of Christian, and State aforesaid, *in and upon one Stephen Bilyeu* then and there being, feloniously, willfully, deliberately, premeditatedly on purpose and of their malice aforethought, did make an assault, etc., but there was omitted therefrom the words, in italics, which were not supplied by words of the same meaning, hence it failed to show that an assault was committed upon said Bilyeu. [Kelley's Criminal Law and Practice, sec. 474, p. 309.]

In State v. Clark, 147 Mo. loc. cit. 28, SHERWOOD, J., in speaking for the court said: "But an assault is always necessary to be charged when a battery occurs in the perpetration of a murder. [Lester v. State, 9 Mo. 658; 2 Bishop, New Crim. Proc., sec. 537; Whart., Hom., sec. 808; 1 Whart. Crim. Law (9 Ed.), sec. 518; 1 Arch. Cr. Proc., 789.] And of course, both the assault and the battery must be alleged to have been made and done on the same person or else there would be a murder perpetrated by means of a battery without an assault having first been made." See, also, State v. Green, 111 Mo. 585.

The State relies upon State v. Phelan, 65 Mo. 547, and State v. Schloss, 93 Mo. 364, as announcing a different rule, but both of those cases were prosecutions for felonious assault merely which is a statutory offense, and clearly distinguishable from the one at bar.

Our conclusion is that the indictment is fatally defective.

It is also asserted by defendant, that the court should have instructed for manslaughter in the fourth degree, but such an instruction was not warranted by the evidence, as it showed that defendant was guilty of murder in the first or

second degree, or that the killing was done in necessary defense of the person of defendant, besides no such instruction was asked, nor was the failure of the court to give all proper and needful instructions excepted to at the time, in the absence of which it can not be convicted of error. [State v. Cantlin, 118 Mo. 100; State v. Nickens, 122 Mo. 607; State v. Paxton, 126 Mo. 500; State v. Waters, 139 Mo. 539.]

The judgment is reversed and the cause remanded. *Gantt, P. J.,* and *Sherwood, J.,* concur.