State v. Sumpter.

# THE STATE v. SUMPTER, Appellant.

### Division Two, January 23, 1900.

1. **Murder: MANSLAUGHTER: CASE STATED.** Defendant had been paying attention to deceased's daughter, contrary to his wishes, and had followed deceased and his family to church, and accompanied the daughter into the building. On the way home, defendant made the remark that he intended to "get deceased before night." Next morning defendant went to deceased's home, and, while conversing with the daughter and her mother, the mother asked him if he had threatened to kill deceased, and, if he had done so, he must go down to the field where deceased was, and talk nice to him; that, if he would, it would make it all right. Thereupon defendant started, saying, "I have got a pistol," and a permit to carry it. On going up to deceased, he said, "Hello, Eli;" but deceased made no reply. After going about ten feet further, defendant said, "Didn't I tell you I was going to kill you?" At this deceased started towards defendant, who fired twice, killing deceased. Defendant pleaded self-defense, stating deceased started toward him with an ax, when he killed him to save himself. The evidence outside of that of defendant made out a clear case of murder in the first degree. *Held*, that an instruction on manslaughter in the fourth degree was properly refused.

2. **Excluding Witnesses: ORDER OMITTED.** Where the record fails to show an order excluding witnesses from the court room, an alleged error, that a witness was permitted to testify after having remained in the court room in violation of such order, is not reviewable.

3. ———: **INADVENTURE.** Evidence will not be excluded because a witness remained in the court room after an order of the court directing all witnesses to withdraw until called, where it does not appear that such act of the witness was with the connivance of the party calling him.

Appeal from Howard Circuit Court.—*Hon. John. A. Hockaday*, Judge.

AFFIRMED.

State v. Sumpter.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1)   The verdict of the jury is according to the law and the evidence.   There being no error committed in the trial of the case and the jury being the sole judge of the guilt or innocence of the defendant, the court will not interfere with their verdict.   State v. Moxley, 115 Mo. 644; State v. Cook, 58 Mo. 548; State v. Musick, 71 Mo. 401.   (2)   A party to a suit can not be deprived of a witness's testimony because that witness has violated the order of the court that the witnesses shall be kept so that they will not hear each other testify.   McLean v. State, 116 Ala. 672; O'Bryan v. Allen, 95 Mo. 68.   (3)   The court properly refused to give an instruction in this case for manslaughter in the fourth degree. State v. Renfrow, 111 Mo. 589; State v. Dunn, 18 Mo. 419; State v. Johnson, 76 Mo. 127; State v. Lane, 64 Mo. 319; State v. Brady, 87 Mo. 142; State v. Smith, 114 Mo. 406.

SHERWOOD, J.—Jode Sumpter, the defendant, was indicted for murder in the first degree, by shooting to death with a pistol, Eli Hursman.

The circumstances attendant on the sad affair are sufficiently set forth in the statement made on behalf of the State:

Eli Hursman, was a farmer living in Howard county, this State.   His family consisted of himself, his wife, several daughters and sons. The defendant had, for some time past, been working for him, with the exception of three weeks immediately prior to the homicide.   He was exceedingly intimate with the family of Hursman and always alluded to him as "Daddy" when talking of or concerning him.   For some time past, it appears, he had been paying attention to one of the daughters of the deceased, which did not meet with Hursman's approbation.   On this account he was discharged from the em-

ployment of Hursman and commenced working for a neighbor near by. On Sunday morning of the eighth day of May, Hursman with his family attended church at New Hope· not far distant from his residence, defendant following on horseback. On arriving at the church defendant accompanied Hursman's daughter into the building, where they remained until after services. He was requested by the mother of the young lady not to do so, as it would cause trouble between him and her husband; besides, the young lady, knowing that her father did not desire 'her to associate herself with defendant, made herself liable to chastisement by him. On the road home, defendant made the remark that he intended to get Hursman before night. This remark was induced on account of the defendant's apprehension that the deceased would reprimand his daughter for going with him.

The next morning, the ninth of May, the defendant went on horseback to the home of Hursman, ostensibly going up the road a short distance to a country store to get some chewing tobacco. On his way, he stopped at the house and engaged in conversation with the young lady and her mother. Mrs. Hursman stated in her testimony that she asked him at this time if he had threatened to kill his "Daddy," meaning her husband, and that if he did not threaten to kill him he must go down to where he was in the field and talk to him nice for he had heard that defendant had threatened to kill him and was feeling very bad about it; that if he would go down and talk to him it would make it all right between them. As soon as he was advised by Mrs. Hursman to talk to her husband, the defendant started down the road in that direction, and as he departed he remarked, "I have got a pistol," and said he had a permit to carry it. Defendant proceeded to the field, where he found Hursman. On coming up to him he said, "Hello, Eli." Hursman made no reply, and after Sumpter had ridden on about ten feet he said to the deceased,

State v. Sumpter.

"Didn't I tell you I was going to kill you." At this Hursman stopped his team, wrapped the lines around the plow handle and started toward the defendant. Defendant raising his pistol fired. As soon as the first shot was fired, Hursman threw his hands to his breast and turned around when the second shot was fired. Defendant then turned and rode rapidly away. One of the shots took effect in the breast of Hursman, the other in the head, which proved fatal, death resulting in fifteen or twenty minutes.

Self-defense was defendant's plea, he stating that Hursman started toward him with an ax, when he killed him to save himself. With the exception of defendant's own testimony, the evidence of the homicide was all one way and made out a clear case of murder in the first degree.

The jury, however, found defendant guilty only of murder in the second degree, assessing his punishment at the lowest term of imprisonment in the penitentiary, to wit, ten years.

Defendant is not represented by counsel in this court, and we can only to some extent conjecture from the motion for a new trial, what grounds of complaint are relied upon as causes for a reversal of the judgment. The instructions given on the part of the State were very full, embracing in approved form murder in the first and second degrees and also self-defense. Seven instructions asked on behalf of defendant as to self-defense, etc., were given and were very favorable to defendant. Defendant asked an instruction on manslaughter in the fourth degree, which the court refused to give, and we think properly refused, as we see nothing in the testimony warranting such an instruction. Nor do we see that any error occurred in the admission of testimony or if there was, the testimony was either immaterial, or the proper objections were not made.

Relative to Charles Hursman having erroneously been permitted to testify, after having remained in the court room in

violation of the order of the court, it is sufficient to say that the record fails to show an order excluding witnesses from the court room.    Besides, had there been such an order, the violation of the order if a mere inadvertence on the part of the witness, and not done through the connivance of the party by whom he was called, would be no ground for his rejection. [1 Bishop, New Crim. Proc., secs. 1191, 1193; O'Bryan v. Allen, 95 Mo. 68.]

Finding no error in the record, we order the judgment to stand affirmed.    All concur.