# THE STATE v. ASHCRAFT, Appellant.

## Division Two, December 2, 1902.

1. **Murder:** INSTRUCTION ON FIRST DEGREE: CONVICTION OF LESSER OFFENSE. On a prosecution for murder, an instruction relative to murder in the first degree, even if erroneous, is no ground for reversal; accused having been convicted of a lesser offense.

2. ———: ERRONEOUS INSTRUCTIONS REFUSED: NO GROUND FOR REVERSAL. Erroneous instructions which are in favor of accused are no ground for reversal.

3. ———: REFUSING INSTRUCTIONS ON SUBJECT PREVIOUSLY COVERED. It is not error to refuse instructions the subject of which has been fully covered in a previous instruction.

4. ———: SUFFICIENCY OF EVIDENCE. On a prosecution for murder, the evidence showed that a few minutes after deceased and accused had had an altercation at a certain house, and shortly after accused had left the house, deceased was seen in the street, and near defendant, and defendant fired a shot, inflicting a fatal wound. Defendant testified that some one came running toward him, and, turning, he saw that deceased was approaching him with a pocketknife open in his hand; that deceased refused to halt when called on to do so, and came within striking distance of accused, and aimed at him with the knife, when defendant fired. A witness, who searched the body of deceased, found only a small pocketknife in an inside pocket and closed. Defendant requested a charge that if deceased assaulted accused, and accused killed deceased without any necessity to save his life and fired recklessly and in disregard of human life, he should be found guilty of manslaughter in the fourth degree. *Held*, on appeal from a conviction of murder in the second degree, that the instruction was properly refused, inasmuch as defendant was either guilty of murder in the first or second degree, or justified on the ground of self-defense, which latter was negatived by the verdict.

5. **Interrogating Witness:** MOTION FOR NEW TRIAL: BILL OF EXCEPTIONS. Where it appears that a motion for a new trial alleged certain questions to have been put to a witness, but the same do not appear in the bill of exceptions, no question arising on such interrogation can be considered; a motion for a new trial not proving its own allegation.

Appeal from Howard Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

AFFIRMED.

*S. C. Major* for appellant.

*Edward C. Crow,* Attorney-General, for the State.

The first instruction correctly defined murder in the first degree. State v. Cushenberry, 157 Mo. 168. Instruction number two was a proper declaration of law as to murder in the second degree. Instruction number twelve correctly stated the law as to the right of the defendant to act when he apprehended and had cause to apprehend deceased was about to inflict upon him some great bodily injury. A mere allegation in the motion for a new trial does not make it a subject for review here unless it is properly preserved, otherwise than in the motion for a new trial, in the bill of exceptions.

SHERWOOD, P. J.—Having been indicted for murder in the first degree, for shooting Henry Hughes with a revolver, whereof he died, defendant was found guilty of murder in the second degree and his punishment assessed at ten years' imprisonment in the penitentiary, and he is an appellant in this court.

The testimony shows that the defendant and the deceased had met in McLaughlin's saloon, in the town of New Franklin, east of where the killing occurred, in the neighborhood of six o'clock that evening, and the defendant testified that the deceased took defendant's cap from his head, placed it on his own and threw his old cap down on the counter and left and that defendant followed deceased out of doors, but deceased went on off with the cap.

The deceased, between six and seven o'clock, was at the house of Emma Robinson, west of where this saloon was situated, quite a distance, in the town of New

Franklin, and there were present Emma Robinson, Ida Ford, Mamie Stapleton, Charlie Hughes and one or two others.

The defendant left the saloon shortly after the occurrence he relates between himself and the deceased, and soon put in his appearance at the home of Emma Robinson. He walked quietly into the house, and seeing the deceased sitting in a chair, defendant observed his cap lying upon the bed and he walked over and picked it up and asked the deceased why he took his cap or hat, and deceased denied that he had defendant's cap, and some controversy occurred between them about the matter and deceased made a movement of some kind in his chair, the exact nature of which the record does not disclose, and defendant put his hand in his pocket, and at this point Mrs. Robinson interfered and said she had a sick daughter in her house and would have no trouble there. Defendant told her he would not have any trouble in her house and went out the door and deceased remained sitting in the chair which he had occupied when defendant entered the house. It seems there was a path leading from the house to the street and soon after the defendant went out one or two witnesses left the house, one of them going up towards the town and another one in the direction of his own home, which was near the house of Mrs. Robinson.

In a few minutes, the deceased arose and left the house, and soon afterwards he was seen between the street and the house and near to the defendant, and defendant was observed to fire a shot which struck the deceased in the neck, inflicting a wound, from which he died shortly thereafter. The evidence shows that the deceased ran, after the shot was fired, to the street and up the same some distance struggling and staggering and finally fell and was picked up and placed on a cot and carried to his stepfather's house and died without making any dying declaration as to the facts concerning the homicide.

The defendant testified that shortly after he left the house and before he reached the street, some one

came running towards him and his attention was attracted by the noise of the rapid footsteps on the snow, and he turned and by the moonlight saw that deceased was rapidly approaching him, with a pocket knife open in his right hand, from behind, inquiring ''Where is he?'' that he continued to approach the defendant, when defendant called to him to halt, the deceased paying no attention to the request of the defendant and continuing to come towards him until he got almost within striking distance, and aiming to make at him with the knife, when defendant says he stepped over to the side of the path to avoid deceased striking him with the knife, and then he, the defendant, pulled his weapon and fired the shot which killed the deceased.

The defendant went up town and delivered himself to the authorities.

There was evidence introduced tending to show the good character of the defendant as a peaceable and good citizen, and that he was a negro boy who had been reared in Howard county near the scene of the tragedy.

The court instructed the jury upon murder in the first degree, murder in the second degree and self-defense.

A witness who was present where Hughes was found in a very few moments after he fell, made search of his body and only found on him a pocket knife, but that was in an inner pocket of his clothing, and it was shut.

Defendant admitted he had shot Hughes, and with the pistol exhibited in the courtroom.

At the instance of the State, the court gave these instructions:

''1.   If the jury believe from the evidence beyond a reasonable doubt, that the defendant Arthur Ashcraft, in Howard county, Missouri, on or about the sixteenth day of December, 1899, with a certain pistol, willfully, deliberately, premeditatedly, and of his malice aforethought shot and killed Henry Hughes, then the jury will find the defendant guilty of murder in the first degree and will so state in their verdict.

"2.    If the jury believe from the evidence beyond a reasonable doubt, that the defendant Arthur Ashcraft, in Howard county, Missouri, on or about the 16th day of December, 1899, with a certain pistol, willfully, premeditatedly, and of his malice aforethought, but without deliberation, shot and killed Henry Hughes, then the jury will find the defendant guilty of murder in the second degree, and assess his punishment at imprisonment in the penitentiary for a term of not less than ten years.

"3.    The court instructs the jury that if they believe from the evidence beyond a reasonable doubt, that the defendant intentionally killed Henry Hughes by shooting him with a loaded pistol in a vital part of the body, then the law presumes such killing was murder in the second degree, in the absence of proof to the contrary, and it devolves upon the defendant to adduce evidence to meet or repel that presumption; unless it is met or overcome by evidence introduced by the State.

"4.    The court instructs the jury that 'willfully' means intentionally, not accidentally, and in the absence of qualifying facts and circumstances, the law presumes that a person intends the ordinary and probable results of his own acts and conduct.

"5.    The court instructs the jury that 'malice,' as used in the indictment and foregoing instructions, does not mean mere spite and ill will or dislike as it is ordinarily understood; but means that condition of the mind which prompts one person to take the life of another without just cause or provocation, and it signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief.

"6.    The court instructs the jury that 'malice aforethought' means that the act was done with malice and premeditation.    'Premeditation' means thought of beforehand for any length of time, however short.

"7.    The court instructs the jury that 'deliberately' means in a cool state of the blood; it does not mean brooded over or reflected upon for a week, a day or an hour; but it means an intent to kill, executed by de-

fendant in a cool state of the blood, in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose, and not done under the influence of a violent passion suddenly aroused by some provocation.

"8. If the jury have a reasonable doubt as to defendant's guilt, they should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching defendant's guilt, and not a mere possibility of his innocence.

"9. The jury are the sole judges of the weight of the evidence, and credibility of the witnesses; in determining what weight they will give to the testimony of any witness the jury should take into consideration the interest of the witness in the event of the case, as a party or otherwise; the manner and conduct of the witness on the stand; any feeling or motive which may have influenced the witness in testifying; the probability or improbability of the testimony of such witness, in view of all the evidence, facts and circumstances surrounding the case.

"10. If the jury believe that any witness has willfully sworn falsely to any material facts in the case, they are at liberty in the exercise of their judgment to disregard all or any part of such witness's testimony.

"11. The court instructs the jury that the defendant is a competent witness in his own behalf, but in determining the weight and credibility you will give to his testimony the jury may take into consideration that he is the defendant testifying in his own behalf and the interest he may have in the result of this trial.

"12. The court instructs the jury that before they can acquit the defendant on the ground of self-defense, they must find and believe from the evidence that the defendant had reasonable cause to apprehend, and did apprehend, that Henry Hughes, the deceased, was about to inflict upon him some great bodily harm, or take his life, and defendant believed, and had reasonable cause to believe that such danger was imminent and impend-

ing; and unless the jury so believe, they can not acquit the defendant on the ground of self-defense.

"13.   He who willfully, that is, intentionally, uses upon another, at some vital point, a deadly weapon, such as a pistol, must, in the absence of qualifying facts, be presumed to know that the result is likely to be death, and, knowing this, must be presumed to intend death, which is the probable consequence of such an act; and if such deadly weapon is used without just cause or provocation he must be presumed to do it wickedly and from a bad heart.   If, therefore, you believe and find from the evidence in this cause that the defendant killed Henry Hughes by shooting him in a vital part, with a pistol, with a manifest design to use such pistol upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, then such killing is murder in the first degree.   And while it devolves upon the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree; yet these need not be proven by direct evidence, and may be deduced from all the facts and circumstances attending the killing; and if you can satisfactorily and reasonably infer their existence from all the evidence, you will be warranted in finding the defendant guilty of murder in the first degree.

"14.   If the jury believe from the evidence beyond a reasonable doubt that the defendant, Arthur Ashcraft, was lying in wait for and intercepted the deceased Henry Hughes on the day he was killed, and for the purpose of killing him or doing him great bodily harm, and that he, the defendant, while there lying in wait for said Henry Hughes, willfully, deliberately, premeditatedly and of his malice aforethought shot and killed said Henry Hughes as he was passing along a public road, then the jury will find the defendant guilty of murder in the first degree, and in such case it makes no difference who made the first assault.

"15.   The court instructs the jury that the previous good character of the defendant, if

proved to your reasonable satisfaction, is a fact which the jury should consider in determining his guilt or innocence; for the law presumes that a man whose reputation is good is less likely to commit an offense than one whose reputation is bad; but if all the evidence proves the defendant to be guilty to your satisfaction beyond a reasonable doubt, then his previous reputation can not palliate, mitigate, justify or excuse his offense.''

To which giving defendant excepted.

Defendant then asked the following instructions, to-wit:

''1.   The jury are instructed that the law presumes the defendant innocent in this case, and not guilty as charged in the indictment.   And you are further instructed that the legal presumption of innocence is not a mere form, to be disregarded by the jury at pleasure, but it is an essential, substantial part of the law, binding upon the jury in this case, and unless the State satisfies you of defendant's guilt beyond a reasonable doubt, it is your duty to act upon this presumption of innocence and render a verdict of not guilty.

''2.   The jury are instructed that in law a person accused of crime is presumed to be innocent.   This presumption entitles him to an acquittal unless it is overcome by evidence which establishes his guilt beyond a reasonable doubt.   A juror is understood to entertain a reasonable doubt when he has not an abiding conviction to a moral certainty that the party accused is guilty as charged.   You should acquit the defendant if you entertain a reasonable doubt as to his guilt, and you should also acquit if it is as reasonable, considering all the facts and circumstances proven, to conclude that he is innocent, as to conclude that he is guilty, or if all the facts and circumstances can be reasonably reconciled with any theory other than that of his guilt.

''3.   The jury are instructed that the indictment in this case is of itself a mere accusation or charge against the defendant, and is not of itself any evidence of the defendant's guilt; and no juror should permit

himself to be to any extent influenced against the defendant because or on account of the indictment in the case. And you are further instructed that in this case the law does not require the defendant to prove his innocence; but the law requires the prosecution to prove that the defendant is guilty in manner and form as charged in the indictment beyond all reasonable doubt, and unless the State has done this, the law makes it your duty to find the defendant not guilty.

"4. The jury are instructed that it is not sufficient in criminal cases to justify a verdict of guilty, that there may be very strong probabilities, or strong suspicions of guilt, nor, as in civil cases, a preponderance of the evidence in favor of the truth of the charge; but the jury must be satisfied, from all the evidence and circumstances in the case, beyond a reasonable doubt, before they can convict; if not so satisfied they must acquit.

"5. The court instructs the jury that evidence of previous good character is competent evidence in favor of a party accused of crime as tending to show he would not be likely to commit the offense alleged against him. And in this case if the jury believe from the evidence that prior to the commission of the alleged crime the defendant has borne a good character for peace and order among his acquaintances, and in the neighborhood where he lived, this is a fact proper to be considered by the jury, with all the other evidence in the case; and if after a careful consideration of all the evidence in the case, including that bearing upon defendant's character, the jury entertain a reasonable doubt of the defendant's guilt, then it is your sworn duty to acquit him.

"6. The court instructs the jury that a man may kill another, and not be guilty of any crime against the law. A killing is justifiable when committed in the lawful defense of one's self, or when committed by one who has reasonable cause to apprehend a design on the part of another to commit a felony upon him, or to do him some great personal injury, and there is reasonable

Vol 170 mo—27.

cause to apprehend immediate danger of such design being accomplished. And, in this case, although you shall believe and find from the evidence, that the defendant, and in the manner and by the means named in the indictment shot and killed Henry Hughes; yet if you shall also find and believe that in so doing, he, the defendant, was acting in the necessary self-defense of his person, either from death or from great personal injury, you should find him not guilty of any offense whatever. You will observe that to acquit on the ground of self-defense it must only appear that a party was apprehensive, in consequence of the acts of the deceased, that injury of a bodily nature to himself was impending and about to fall on him, and that the taking of the life of the deceased was, under the circumstances, apparently or actually necessary to prevent such injury. If, therefore, you shall believe from the evidence that from the conduct, actions, manner and declarations of the deceased, Henry Hughes, at the time he was shot by the defendant Arthur Ashcraft, he, the defendant, had reasonable cause to apprehend, and did apprehend that the deceased Henry Hughes was about to do him some great bodily harm or to take his life, and that he, the defendant, had reasonable cause to apprehend, and did apprehend, that there was danger of the deceased executing his purpose and accomplishing his design, and that defendant shot the deceased for the purpose of preventing such execution and such accomplishment, the verdict should be that the defendant is not guilty, because such killing, under such circumstances, is justifiable in the law because done in self-defense. To acquit on the ground of self-defense it is not necessary that the danger of death or injury to which the defendant apprehended himself to be exposed was real or actual, or that it was impending and about to fall on him. It is only necessary that it should appear to you that the defendant so apprehended himself to be exposed to such danger, and that his apprehension was reasonable considering all the circumstances of the case as proven, and the situation of the parties at the time, and that

the defendant acted in good faith upon the situation as it appeared to him, and under a real apprehension of danger to himself.

"7. The jury are instructed that if they believe from the evidence that the defendant Arthur Ashcraft, at the time he shot Henry Hughes had reasonable cause to apprehend from him, and did apprehend, immediate danger of being killed or receiving some serious injury to his person, and to prevent such danger he shot the said Henry Hughes, then you must acquit the defendant on the ground of self-defense. And if the defendant acted in a moment of apparently impending peril from an assault by Henry Hughes, it was not for him to nicely gauge the proper quantity of force necessary to repel the assault, but he had the right to act upon appearances and use such force as he had reasonable cause at the time to believe was necessary.

"8. The court instructs you that a person about to be attacked, or who believes he is about to be attacked and has reasonable cause for so believing, is not bound to wait until his adversary gets close enough to him to strike him with some deadly weapon, but may act on appearances and take steps to prevent such striking even unto the taking of life.

"9. The court instructs you that although you may find and believe from the evidence that the defendant went to the house of Emma Robinson and voluntarily entered into a difficulty with the deceased for some unlawful purpose, yet if you find and believe from the evidence that he abandoned the difficulty and left the place in good faith and started up town and the deceased followed him and acted in such a manner as to give the defendant good cause to believe and he did believe that the deceased was about to do him some great bodily harm, he had the right to shoot and kill the deceased if necessary to protect his person from such apprehended danger, and you should find the defendant not guilty.

"10. The court further instructs you that although you may find and believe from the evidence that the defendant was in the wrong in the first instance in

going to the house of Emma Robinson and quarreling with the deceased, yet if you find and believe from the evidence that he in good faith withdrew from the difficulty and started up town intending to abandon the quarrel, and the said Henry Hughes followed him, then if the killing of the said Henry Hughes became necessary to save himself from death or great bodily harm, he will be justified and you should find him not guilty.

"11. The court instructs you that to entitle a defendant charged with murder to an acquittal on the ground of self-defense, he need not establish his defense by a preponderance of evidence. It is sufficient if the evidence is such as to create in the minds of the jury a reasonable doubt of his guilt.

"12. The court instructs the jury that the fact that the deceased Henry Hughes was at the home of Emma Robinson and the defendant knew it, and even expected that the deceased would attack him, the fact would in nowise affect his plea of self-defense, and you should acquit the defendant, if you believe the killing was done in self-defense as in these instructions explained.

"13. The court instructs the jury that the law of the State of Missouri not only recognizes the right of self-defense but guarantees the same to all men. The defendant may, therefore, have killed the deceased and still be innocent of any offense against the law. The accepted doctrine of self-defense is that when a person apprehends that some one is about to do him great bodily harm, and there is reasonable cause to believe the danger imminent that such design will be accomplished, he may safely act upon appearances, and may even kill his assailant if he has reasonable cause to believe, and did believe, it was necessary to protect himself from such apprehended danger; and the killing will be justifiable, although it may afterwards turn out that the appearances were false and there was in fact neither design to do him serious injury nor danger that it would be done. He must decide at his peril upon the force of circumstances in which he is placed, for that

is a matter that will be subject to judicial review. But he will not act at his peril of making that guilt if appearances prove false, which would be innocent had they proven true.''

Of which all were given except 12 and 13, and to the refusal to give them, defendant saved the point. Defendant then asked and excepted, because the Court refused to give this instruction:

"A.  The court instructs the jury that if they believe from the evidence that the deceased Henry Hughes made an assault upon the defendant, and that the defendant shot and killed Henry Hughes without any necessity or apparent necessity to save his life or prevent great bodily harm to himself, and that the defendant fired the shot negligently, recklessly, and in reckless disregard of human life, then the jury should find the defendant guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for two years, or in the county jail not less than six months or by a fine not less than $500 or by both a fine not less than $100 and imprisonment in the county jail not less than three months.''

Defendant also saved exception to the court's giving, of its own motion, these instructions:

"1.  The jury are instructed that the defendant is a competent witness in his own behalf, and they should not disregard his evidence because he is the defendant and stands charged with a crime; but they should fairly and impartially consider and weigh his testimony by the same rule as that of other witnesses in the case.

"2.  If you find the defendant not guilty the form of your verdict will be, 'We, the jury, find the defendant not guilty.'

—————————'Foreman.' ''

Instruction 14 given at the State's instance, inasmuch as it related to murder in the first degree, even if erroneous, could not have injured defendant, since he was found guilty of a lesser offense.  As to the other instructions given by the court at the instance of either party, they put the defendant's cause very fairly to

the jury, and if any error was committed in giving them, the error was in defendant's favor.

As to instructions 12 and 13 asked by defendant, but refused, they related to self-defense, which subject had been fully covered by instructions previously given on defendant's behalf.

Relative to an instruction which for convenience sake has been marked "A," it suffices to say that there was no evidence on which to bottom it. Defendant was either guilty of murder in the first, or murder in the second degree, or was wholly justifiable on the ground of self-defense; and this last has been negatived by the verdict of the jury.

In regard to a question alleged in the motion for a new trial to have been asked by the prosecuting attorney of a witness: "Did you not whip this defendant for stealing Mr. Billy Wells's hogs?" it is sufficient to say that no such question is to be found in the bill of exceptions, and a motion for a new trial does not prove its own recitals.

The defendant was fairly tried and convicted upon sufficient evidence, and we affirm the judgment. All concur.